**SEALED**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

FILED SEALED
AUG 17 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ________
DEPUTY CLERK

UNITED STATES OF AMERICA,

Plaintiff,

vs.

**ALEJANDRO SANTOYO-GUZMAN (1)**
A/K/A "WERO"
A/K/A "GUERO"
A/K/A "MURDER BABY"
A/K/A "MURDER BABY XXX"
A/K/A "YOUNG MONEY"
A/K/A "MONEY"
A/K/A "EL IND!o"
A/K/A "DANIEL EL TRAVIESO"
A/K/A "MALAKIAS"
A/K/A "ALEX GUZMAN"
A/K/A 1MURDERBABY511@GMAIL.COM
A/K/A "ALEJANDRO GUZMAN"
A/K/A "YOUNG PRINCE"
A/K/A "NUEVA FAMILIA"
A/K/A "BILL6"
A/K/A "MORR"

Defendant.

Case No. DR:26-CR-01860-AM-(1)

# PLEA AGREEMENT

The United States Attorney for the Western District of Texas, and Defendant ALEJANDRO SANTOYO-GUZMAN, enter into the following plea agreement in this cause, pursuant to Federal Rule of Criminal Procedure 11(c)(1):

## Agreement to Plead Guilty:

Defendant agrees to plead guilty to Counts One, Two, Three and Four of the Indictment, which charges Defendant with Conspiracy to Transport Illegal Aliens Resulting in Death, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) & (B)(iv); Transportation of Illegal Aliens Resulting

n Death in violation of 8 U.S.C. § 1324 (a)(1)(A)(ii) & (B)(iv); Conspiracy to Commit Hostage Taking and Hostage Taking in violation of 18 U.S.C. § 1203.

Defendant agrees and consents to be advised of his or her constitutional rights and to enter voluntary plea of guilty before a United States Magistrate Judge if the United States District udge refers said plea to the United States Magistrate Judge. Defendant understands that both his r her guilty plea and this Agreement are subject to the approval of the United States District Judge nd that sentencing will be conducted by the United States District Judge.

**enalty:**

The offenses to which Defendant is pleading guilty carries the following penalty:

Count One: 8 U.S.C. § 1324(a)(1)(A)(v)(I) & (B)(iv) - Conspiracy to Transport Illegal Aliens Resulting in Death

| | |
|---|---|
| Maximum Prison Term | Life |
| Mandatory Minimum Prison Term | None |
| Maximum Term of Supervised Release | 5 years |
| Mandatory Min. Term Sup. Release | None |
| Maximum Fine | $250,000 |
| Monetary Assessment | $100 Special Assessment<br>$5,000 pursuant to 18 U.S.C. 3014 Special Assessment (non-indigent if applicable) |
| Amount of Restitution | Mandatory pursuant to 18 U.S.C. § 3663A (MVRA) |
| Forfeiture | None |

Count Two: 8 U.S.C. § 1324 (a)(1)(A)(ii) & (B)(iv)– Transportation of Illegal Aliens Resulting n Death

| | |
|---|---|
| Maximum Prison Term | Life |
| Mandatory Minimum Prison Term | None |
| Maximum Term of Supervised Release | 5 years |
| Mandatory Min. Term Sup. Release | None |
| Maximum Fine | $250,000 |
| Monetary Assessment | $100 Special Assessment<br>$5,000 pursuant to 18 U.S.C. 3014 Special Assessment (non-indigent if applicable) |

| | |
|---|---|
| Amount of Restitution | Mandatory pursuant to 18 U.S.C. § 3663A (MVRA) |
| Forfeiture | None |

Count Three: 18 U.S.C. § 1203 - Conspiracy to Commit Hostage Taking

| | |
|---|---|
| Maximum Prison Term | Life |
| Mandatory Minimum Prison Term | None |
| Maximum Term of Supervised Release | 5 years |
| Mandatory Min. Term Sup. Release | None |
| Maximum Fine | $250,000 |
| Monetary Assessment | $100 Special Assessment |
| Amount of Restitution | None |
| Forfeiture | None |

Count Four: 18 U.S.C. § 1203 – Hostage Taking

| | |
|---|---|
| Maximum Prison Term | Life |
| Mandatory Minimum Prison Term | None |
| Maximum Term of Supervised Release | 5 years |
| Mandatory Min. Term Sup. Release | None |
| Maximum Fine | $250,000 |
| Monetary Assessment | $100 Special Assessment |
| Amount of Restitution | None |
| Forfeiture | None |

Any term of imprisonment imposed does not provide for parole. Having discussed the statutory range of punishment with Defendant's attorney, Defendant knows that statutory range and still wants to plead guilty in this case.

Defendant understands that in determining Defendant's sentence, the Court will consider the factors set forth in 18 U.S.C. § 3553(a) and the U.S. Sentencing Guidelines and accompanying policy statements, which are advisory. Because the Sentencing Guidelines are advisory only, Defendant's sentence may lie within, below, or above the Sentencing Guideline range after the Court has considered the § 3553(a) factors. Any estimate of the advisory sentencing range or probable sentence from any source including Defendant's attorney, the attorney for the

Government, or the Probation Officer, is merely an estimate and not a prediction or a promise.

Defendant stipulates that no person has promised what sentence Defendant will receive. Defendant knows the Court has authority to impose any sentence up to the maximum statutory penalty. Defendant acknowledges and understands that Defendant will not be permitted to withdraw the plea of guilty if the Court declines to follow any sentencing recommendations made by any party to this agreement or imposes a sentence greater than Defendant expected. The Government reserves the right to advocate in support of the Court's judgment should this case be presented to an appellate court.

**Factual Basis for Plea:**

Defendant acknowledges that Defendant's attorney has explained to Defendant all of the elements of each offense to which Defendant is pleading guilty. Defendant understands that if Defendant pleads not guilty, the United States would be required to prove each of these elements to the unanimous satisfaction of a jury beyond a reasonable doubt. By signing this Plea Agreement, Defendant admits that the facts set out in the factual basis below are true and correct.

**Background and Defendant's Role**

Defendant is the leader of a Transnational Criminal Organization (TCO), herein referred to as ("The Guzman TCO"). The Guzman TCO is an international criminal enterprise operating in Oklahoma, Alabama, Texas, and Mexico. The organization's focus of criminal activity includes illegal alien smuggling and weapons trafficking. The Guzman TCO is directly linked to the Cartel Del Noreste. Defendant has recruited numerous inmates within the Oklahoma DOC to assist in his criminal enterprise. Defendant has also enlisted numerous members of his own family and friends to assist in the operations of the criminal enterprise.

It is estimated that the TCO moved hundreds of illegal aliens per month through the Western District of Texas. Locally, the smuggling traffic primarily impacts the Uvalde, Carrizo Springs, Del

Rio, and Eagle Pass areas. The load drivers are predominantly from Oklahoma, Louisiana, and Houston, Texas. To date, law enforcement has been able to attribute more than 1000 illegal aliens and over 300 failed smuggling events to the TCO.

Through a search of Defendant's cell phones and another co-conspirator Jessica Castillo Guzman's, indicted in Cause No. 23-CR-1858-AM-1, cell phone, law enforcement has discovered numerous photographs of weapons and conversations concerning weapons consistent with weapons trafficking. One cooperating defendant also relayed that the TCO is involved in trafficking weapons to Mexico. To date, the TCO has been associated with at least one significant weapons seizure by the Texas Department of Public Safety (DPS) near La Pryor, TX. On September 23, 2021, a female subject was interdicted near Eagle Pass, Texas with a load of (16) weapons and (2) sets of body armor, that were in route to Mexico. Additionally, two smuggling events linked to the TCO, involved drivers found in possession of a firearm, one of which was determined to be a stolen weapon. Most recently, on April 23, 2023, two subjects were apprehended in Maverick County transporting a group of illegal aliens through the brush. Both principals were armed, one with a 9mm handgun, and one with a loaded AR-15 rifle, as they moved the group of illegal aliens. *Defendant was aware of this event and believes that it is reasonably foreseeable in light of the violence within the TCO and the way that the TCO operated.*

**<u>The Death Event</u>**

On August 7, 2022, Texas Department of Public Safety (DPS) was involved in a high-speed chase that ended in a multiple fatalities vehicle crash. The car accident occurred in Kimble County, which is an area located within the Western District of Texas. The vehicle was rented in Tulsa, Oklahoma. The deceased driver was identified as Exavion Dontelle Mackey (hereinafter referred to as "Mackey"), a United States citizen. The two other occupants of the vehicle were identified as Ms. Silvia Hernandez-Ruiz, and Mr. Pedro Luis-

Hernandez, both citizens and nationals of Mexico with no legal authority or documentation to have entered or remained in the United States. All were pronounced dead at the scene.

Based upon the autopsy findings, the Medical Examiner (ME) determined that Sylvia Hernandez Ruiz, a 31-year-old white female, died as a result of multiple traumatic injuries resulting from a motor vehicle incident, in which she was reportedly an unrestrained back seat passenger who was ejected from the vehicle after the driver lost control, left the roadway, and hit a fixed object that caused the vehicle to roll. The ME also determined that Pedro Luis Hernandez Ruiz, a 40-year-old white male, died as a result of multiple traumatic injuries resulting from a motor vehicle accident where he was reportedly ejected from a vehicle in which he was riding as a front seat passenger. The ME further determined that Mackey, a 31-year-old black male, died as a result of multiple severe traumatic injuries resulting from a motor vehicle incident where the decedent was the reported driver of a vehicle that left the roadway and collided with a tree, rolled, and came to rest upside-down.

Further investigation into the Guzman TCO and the persons involved in this incident revealed that Mackey was previously incarcerated in the Oklahoma DOC. HSI analysts were also able to confirm that Mackey had received $99 from a person named Hassan Thomas, indicted in 24-CR-00879-AM-(1), on the date of the fatality. In fact, Defendant was actually talking on the phone with the driver, Mackey, just prior to the fatal accident. *Defendant fully agrees and admits that this fatal accident was foreseeable and well within the scope of the organization's operations.*

**<u>Barbershop Shooting (August 21, 2022)</u>**

On August 21, 2022, Ricardo Kanck Rojas ("Rojas"), indicted in Cause No. 24-CR-879-AM-5, was the principal in an aggravated assault with a deadly weapon in Houston, Texas. Rojas is

depicted in a barber chair getting his hair cut, when two Hispanic males pass by the chair and say something, causing Rojas to get up and begin shooting at them across the barber shop. During Houston Police Department's investigation of this incident, the owner of the barber shop relayed that Rojas extorts illegal aliens for additional money, and if he is not satisfied with a "payment play" to pay off a smuggling debt, he threatens the family of the smuggled aliens. The barber shop owner said that in this case, the smuggled illegal aliens had arranged to pay off their smuggling debt at the rate of $400 per month, but that was not good enough for Rojas, so he threatened harm to their families. It was this threatened harm to the illegal alien's families that caused them to approach Rojas at the barber shop and express their displeasure with his threats – ultimately leading Rojas to use immediate violence to enforce the debt. Defendant was aware of this incident after it occurred, but he did not order it. *Defendant was aware that Rojas, a member of this organization, was extorting the families of the smuggled illegal aliens, and believes that this type of violence is foreseeable, as it related to the organization's business and alien smuggling.*

**Attempted Murder (September 1, 2022)**

On September 1, 2022, Ms. P.M. the victim of an attempted murder. She was shot six times in the upper torso but survived the shooting. On the day of the shooting, the ring doorbell camera captures Castillo-Guzman inquiring with Ms. P.M. as to the whereabouts of the illegal aliens "Gente" and the whereabouts of the load driver. It was Ms. P.M. who introduced the load driver to Castillo-Guzman a month prior for the purpose of "making some money," and now that the load driver had not returned with the illegal aliens, nor had she been seen at all since departing on the July 28, 2023, smuggling venture, Castillo-Guzman believed that she had "stolen her load" of illegal aliens. Castillo-Guzman is also seen and recorded at Ms. P.M.'s daughter's house inquiring as to the whereabouts of the load driver. Defendant and Rojas were very upset that the load driver had allegedly stolen the load of illegal aliens. Defendant and Rojas paid a person named Israel Ramirez-Perez, indicted in Cause No.

24-CR-879-AM-4, and a person who goes by the moniker Greñas $5000/each to shoot and kill Ms. P.M. On September 1, 2022, while Greñas, the driver, stood as a lookout, Ramirez-Perez shot Ms. P.M. six times in front of the apartment in Houston, Texas. *Defendant admits that this action is directly related to illegal alien smuggling and well within the scope of the organization's operations.*

**Aggravated Kidnapping (November 27, 2022)**

On November 27, 2022, Harris County Sheriff's Office Detective interviewed Castillo-Guzman concerning the kidnapping of her mother. During the interview, Castillo-Guzman relayed that she had met Defendant on Facebook while he was in custody. She also relayed that he had asked her, "if she wanted to make some money picking up people." Castillo agreed and began to travel to Eagle Pass, Texas to smuggle illegal aliens, but she was caught on her second trip. She further relayed that she continued to work with Guzman while she was out on bond. She stated, "it just continued, I was already deep in there." Guzman would just call me and tell me, "Go do this, go do that, and I would just do it." In the interview, Castillo-Guzman also admits that she had employed two female illegal aliens with her construction company. Castillo-Guzman also stated that the reason for the kidnapping was because Defendant wanted the proceeds from the trafficking back, as the reason her mom was kidnapped. Defendant fully agrees and admits that he ordered the kidnapping of Ms. Rosemary Guzman, and that the reason that he ordered Ramirez-Perez to kidnap her was to attempt to extort Castillo-Guzman in an attempt to retrieve smuggling proceeds. Defendant also relayed that during the kidnapping, Ramirez-Perez stated that he "just wanted to kill her [Ms. Rosemary Guzman]." *Defendant agrees and admits that this incident is directly related to illegal alien smuggling and well within the scope of operations for the criminal organization.*

**Hostage Taking**

Between on or about May 30, 2024, and on or about June 3, 2024, Edgar Guzman ("Guzman"), indicted in Cause No. 24-CR-879-AM-6 and several other coconspirators were

involved in a successful human smuggling event that started in Piedras Negras, Mexico, transitioned through Eagle Pass, Houston, and finally ended in Austin, Texas. During the event, Guzman and other coconspirators held numerous illegal aliens hostage and attempted to extort the family members of the illegal aliens for additional smuggling fees. During the communications with the families, in an attempt to scare and threaten the families, the organization sent videos brandishing firearms, and making threatening statements. The event culminated when several coconspirators with weapons fired numerous rounds at a vehicle carrying some of the illegal aliens. During the shooting one of the illegal aliens named Ms. M.D.C.J-G. was shot in the head and survived.

Jesus Rubio Martinez ("Rubio Martinez") is most directly tied into this event by the victim of the shooting that personally identifies him as the facilitator, and person who transported her from stash houses in Houston to the scene of the shooting (Home Depot). Additionally, the Government has a video obtained from family members of the victim, whereby he is extorting them for further smuggling fees. Defendant was aware of this event, and while he did not order the extortion and hostage taking, he was aware of the incident and knew it was carried out by members of the organization. Defendant knows that members of the organization were extorting family members for additional smuggling fees, and he knows that violence was often associated with this type of activity. Defendant is the first cousin of Edgar Guzman. *Defendant believes that this particular incident was foreseeable and well within the scope of the organization's operations.*

Defendant now accepts responsibility and admits that between on or about May 25, 2021, through July 1, 2026, he conspired to transport aliens within the United States who had come to, entered and remained in the United States in violation of law that he knew or recklessly disregarded the fact that the aliens had come to, entered, or remained in the United States, in violation of law, that such transportation was in furtherance of such violation of law, and such offense resulted in

the death of one or more persons, all in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and (B)(iv).

Defendant now accepts responsibility and admits that on or about August 7, 2022, he knowing and in reckless disregard of the fact that a certain alien, had come to, entered and remained in the United States in violation of law, did willfully and unlawfully transport and move, and attempt to transport and move, said alien within the United States by means of transportation and otherwise, and in furtherance of such violation of law, and said offense resulted in the death of one and more than one persons, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) & (B)(iv).

Defendant now accepts responsibility and admits that between on or about May 30, 2024 and on or about June 3, 2024, in the Western District of Texas, and elsewhere, he did knowingly and intentionally combine, conspire, confederate and agree with others known and unknown to intentionally seize and detain and threaten to kill, injure, and continue to detain another person in order to compel a third party to forward, by means of electronic wire transfer, funds in the form of United States Dollars, as an explicit and implicit condition for the release of said person, in violation of Title 18, United States Code, Section 1203(a).

Defendant now accepts responsibility and admits that on or about May 30, 2024, and on or about June 3, 2024, in the Western District of Texas, and elsewhere, he aided and abetted, and did intentionally seize and detain and threaten to kill, injure, and continue to detain a person in order to compel a third party to pay money and property, as an explicit condition for the release of the hostage, M.D.C.J.-G., all in violation of Title 18, United States Code, Section 1203.

**<u>Defendant's Waiver of Statutory and Constitutional Rights:</u>**

Defendant understands and acknowledges that by pleading guilty, Defendant is waiving the following constitutional and statutory rights:

(1) The right to plead not guilty and persist in that plea.

(2) The right to a speedy and public jury trial.

(3) The right to assistance of counsel at that trial and in any subsequent appeal of that trial.

(4) The right to remain silent at trial.

(5) The right to testify at trial.

(6) The right to confront and cross-examine government witnesses.

(7) The right to present evidence and witnesses on his or her own behalf.

(8) The right to compulsory process of the court.

(9) The right to be presumed innocent.

(10) The right to a unanimous guilty verdict.

(11) The right to appeal a guilty verdict.

In addition to giving up the rights described above, Defendant agrees to give up and waive the following:

<u>Pretrial Motions:</u> Defendant understands that Defendant could raise issues and challenges by pretrial motion, including motions to suppress evidence and to dismiss the charges. By entering into this agreement and pleading guilty, Defendant agrees to give up all claims Defendant has made or might have made by pretrial motion and to the dismissal of any currently pending motions.

<u>Discovery:</u> Defendant agrees to waive any claims Defendant may have now or may acquire later to any information possessed by the prosecution team that might be subject to disclosure under discovery rules, including but not limited to the Federal Rules of Criminal Procedure; the

*Jencks* Act; local court rules and court orders. Defendant waives any continuing discovery request and any additional discovery. Defendant also waives all rights to request from any federal department or agency any records pertaining to the investigation or prosecution of this case, including but not limited to any records that may be sought under the Freedom of Information Act (5 U.S.C. § 552) or the Privacy Act (5 U.S.C. § 552a).

Legal Fees and Expenses: Defendant stipulates that Defendant is not entitled to and shall not seek from the United States any attorney fees or other litigation expenses Defendant has incurred or will incur in connection with this prosecution.

**Defendant's Waiver of Right to Appeal or Challenge Sentence:**

In exchange for the concessions made by the United States in this agreement, Defendant voluntarily and knowingly waives the right to appeal the conviction or sentence on any ground, including any challenge to the constitutionality of the statute of conviction; any claim that Defendant's conduct did not fall within the scope of the statute of conviction; any challenges to the determination of any period of confinement, monetary penalty or obligation, restitution order or amount, term of supervision and conditions; and any other claim based on rights conferred by 18 U.S.C. § 3742 or 28 U.S.C. § 1291.

Defendant, knowing that the sentence has not yet been determined by the Court, waives the right to challenge the sentence imposed, including restitution. Defendant cannot challenge the sentence imposed by the District Court even if it differs substantially from any sentencing range estimated by Defendant's attorney, the attorney for the Government, or the Probation Officer.

Defendant also voluntarily and knowingly waives any right to contest the conviction or sentence (or the manner in which the sentence was determined) in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or any other provision of law. Consistent with principles of professional responsibility imposed on Defendant's counsel and

counsel for the Government, nothing in this agreement precludes Defendant from raising a claim of ineffective assistance of counsel or prosecutorial misconduct of constitutional dimension in an appropriate forum.

Defendant agrees that the United States preserves all rights set forth in 18 U.S.C. § 3742(b).

If Congress or the U.S. Sentencing Commission amends the Sentencing Guidelines to lower the guideline range that applies to Defendant's offenses and explicitly makes that amendment retroactive, the government agrees not to assert this waiver as a bar to Defendant filing a motion under 18 U.S.C. § 3582(c)(2) in district court. However, if Defendant files such a motion, the government reserves the right to oppose that motion and to assert this waiver as a bar to Defendant appealing the district court's decision on that motion.

**Advice of Counsel:**

Defendant acknowledges reviewing with Defendant's counsel the merits of the charges and possible defenses that Defendant may have; the advantages and disadvantages of pleading guilty; the terms and meaning of the plea agreement; and the consequences of pleading guilty. Defendant has discussed with Defendant's attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

Defendant understands that, if convicted, a defendant who is not a United States citizen or is a naturalized citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**Sentencing Agreement RULE 11(c)(1)(B):**

In exchange for Defendant's agreement to plead guilty as set forth above, the United States Attorney for the Western District of Texas agrees to the following:

**Non-Binding Sentencing Recommendation:**

The parties also agree pursuant to Fed. R. Crim. P. Section 11(c)(1)(B) (non-binding sentencing recommendation) as part of this Plea Agreement to make a non-binding recommendation to the Court on Sentencing. The Defendant and the Government agree to ask the Court to impose a sentence of LIFE incarceration in the Bureau of Prisons in this case.

The Defendant understands that he will also be subject to a fine and term of supervised release as determined by the Court. It is understood by the parties that the final determination to accept a plea pursuant to Rule 11(c)(1)(B) ultimately remains in the Court's discretion. The parties acknowledge that the recommended sentence may be outside of the Advisory Federal Sentencing Guideline calculations for the instant offense, but the parties stipulate that the requested sentence is reasonable under the circumstances of the case. Defendant understands that this Non-Binding Sentencing Recommendation is only a recommendation by the parties and the Court is not required to follow said recommendation. Finally, Defendant also understands and agrees that this agreement confers no right to challenge the agreement and confers no remedy upon the Defendant in the event the Court elects not to follow the parties' Non-Binding Sentencing Recommendation.

The Government agrees to recommend that any sentence imposed by this court run concurrently to any previous state sentences imposed from prior criminal acts of the Defendant.

The Government agrees to recommend placement for the Defendant at the United States Penitentiary, Administrative Maximum Facility, USP Florence ADMAX and protective placement in accordance with the Federal Bureau of Prisons (BOP) classification protocols.

**No-Seek Confirmation:**

The United States confirms that the Capital Case Section of the United States Department of Justice has authorized the United States to proceed in this cause under a "no seek"

determination, and the United States will not seek the death penalty as to any count of the Indictment.

**Defendant's Agreement to Cooperate with the Government:**

Following his plea of guilty, Defendant will cooperate with federal authorities in the investigation and prosecution of any offenses as alleged by the Government in reference to any indicted or unindicted co-conspirators. Defendant agrees to thoroughly and truthfully debrief with the United States Attorney for the Western District of Texas as to all criminal transgressions known to Defendant, including all such transgressions in which the Defendant was involved. It is agreed that any such statement made by Defendant will not be used by the Government to institute additional charges against Defendant or increase Defendant's applicable guideline sentencing range (See U.S.S.G. § 1B1.8). The Government may, however, use the information to impeach Defendant at trial or at sentencing in this or any other cause should the Plea Agreement be withdrawn.

Defendant further agrees to fully cooperate in the investigation and prosecution of any and all criminal activity known to Defendant. Such cooperation includes, but is not limited to, Defendant's truthful testimony in Federal or State court or before any grand jury and/or at administrative hearing concerning any matter known to Defendant. Defendant understands and agrees that this Plea Agreement requires that Defendant be completely truthful in disclosing all information to agents and that Defendant be completely truthful in any testimony given pursuant to this Plea Agreement. Should Defendant be less than truthful in any respect, whether through testimony as a witness or through statements to federal agents, this Plea Agreement is void. Under no circumstances shall Defendant be permitted to withdraw his plea of guilty.

In the event Defendant fully complies with this Plea Agreement to cooperate with the

Government and provides "substantial assistance" to the Government, the United States agrees to file a motion for a downward departure pursuant to USSG § 5K1.1 and/or Rule 35 Fed.R.Crim.P., respectively, so long as the Defendant continues full, complete and truthful cooperation. Defendant understands that his duty to cooperate shall begin prior to his sentencing and may extend after his/her sentencing. That is, the Government may elect to delay the filing of a motion for downward departure until after his sentencing if Defendant has not yet completed his agreement to cooperate and has not yet provided "substantial assistance" to the Government in its efforts to investigate and prosecute others involved in criminal activity.

This Plea Agreement is not conditioned upon charges being brought against any other individual. Further, this Plea Agreement is not conditioned upon: (a) any outcome in any pending investigation; (b) in any future prosecution; (c) any future grand jury proceeding; or, (d) any trial involving charges resulting from this investigation. This Plea Agreement is conditioned upon Defendant providing full, complete, and truthful cooperation. Defendant understands that Defendant is to tell the absolute truth, not what Defendant thinks "the Government wants to hear." Defendant understands that neither the United States nor the Court will sanction exaggerated or perjurious testimony. Defendant understands that in the event the Government discovers that Defendant has been untruthful during any debriefing or testimony that Defendant gave, then this Plea Agreement will be null and void. In other words, the Defendant must be completely truthful.

If Defendant fails to fulfill all of his obligations in this Plea Agreement in any way, the United States will be released from all of its obligations under this Plea Agreement. Thus, for example, if Defendant knowingly withholds evidence, or otherwise is not completely truthful with the United States, an officer of the United States, any law enforcement officer, or in testimony before the grand jury or at trial, then: (a) Defendant may be prosecuted for perjury, false statement

and/or obstruction of justice or any other offenses that have been committed; (b) Any information and documents that have been disclosed by Defendant, prior to this Plea Agreement and all leads derived therefrom will be used against Defendant in any prosecution; (c) The United States will be permitted to recommend to the Court any sentence it considers appropriate, up to and including the maximum possible sentence; and, (d) The United States will be permitted to seek any other relief or penalty as may be just or proper.

Additionally, if Defendant fails to fulfill completely all of the obligations under this Plea Agreement, Defendant shall assert no claim under the United States Constitution, any statute, Fed.R.Evid. 410, Fed.R.Crim.P. 11(e)(6), or any other federal rule that statements made by Defendant pursuant to this Plea Agreement or any leads derived therefrom, should be suppressed or are inadmissible.

Defendant understands that the Court is not obligated to grant a downward departure that might be recommended by the Government for substantial assistance pursuant to U.S.S.G. § 5K1.1 or Rule 35, as provided above. Defendant understands that the sentence to be imposed is within the complete discretion of the Court. Defendant will not be permitted to withdraw his guilty plea because of the Court's decision in imposing such sentence. Moreover, the Government reserves the right to advocate in support of the Court's judgment should this case be presented to an appellate court.

**Restitution**

The Defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A applies and that the Court is required to order the Defendant to make restitution to the victims of the Defendant's crime. The restitution amount will be determined at the time of sentencing, or within 60 days, unless otherwise waived, in accordance with all applicable

regulations.

**Reservation of Rights:**

The Government and Defendant each reserve the right to (1) present facts to the U.S. Probation Office during preparation of a pre-sentence report; (2) dispute sentencing factors or facts material to sentencing listed in the pre-sentence report; (3) seek resolution of such factors or facts in conference with opposing counsel and the U.S. Probation Office; and (4) answer any questions posed by the Court. All parties reserve full rights of allocution as to the appropriate sentence Defendant should receive unless otherwise provided above.

**Breach of Agreement:**

If Defendant violates any term of this Plea Agreement, the Government will be released from its obligations under this Plea Agreement and may, in its sole discretion:

(1) move to set aside Defendant's guilty plea and proceed on charges previously filed and any additional charges;

(2) at sentencing or in any prosecution, use against Defendant any statements or information Defendant provided as part of the guilty plea,

(3) seek to revoke or modify conditions of release;

(4) advocate for any sentence up to and including the statutory maximum; and/or

(5) decline to seek a reduced sentence.

Defendant understands and agrees that Defendant's breach of this Plea Agreement will not entitle Defendant to withdraw a guilty plea already entered. However, if Defendant withdraws from this agreement, Defendant agrees and understands that the factual basis set out in this Plea Agreement (1) may be used against Defendant in the Government's direct case and (2) sets forth facts that are true, accurate, admissible at any trial or hearing, and not subject to challenge under Federal Rule of Evidence 410(a) or Federal Rule of Criminal Procedure 11(f).

**Totality of Agreement:**

Defendant understands that this Agreement binds only the U.S. Attorney for the Western District of Texas. When this Agreement uses the term Government, it refers only to the U.S. Attorney's Office for the Western District of Texas. This Plea Agreement sets forth the entirety of the agreement between the United States Attorney for the Western District of Texas, Defendant, and Defendant's counsel. This agreement cannot be modified except in a written document signed by all parties. If an addendum to this agreement has been properly executed, it is incorporated herein by reference.

JUSTIN R. SIMMONS
United States Attorney

DATE: 8/17, 2026

By: ____________________
BRETT C. MINER
Assistant United States Attorney

I am counsel for Defendant ALEJANDRO SANTOYO-GUZMAN, in this case. I have fully explained to Defendant all of Defendant's rights with respect to the pending criminal charge. I have carefully reviewed this plea agreement in its entirety with Defendant and provided Defendant with my best professional advice. In my opinion, Defendant's decision to enter into this plea agreement is made freely, voluntarily, and with full knowledge of its obligations and consequences.

DATE: 8/17, 2026

____________________
Jacques L. De La Mota
Attorney for Defendant

I, ALEJANDRO SANTOYO-GUZMAN, have carefully read and reviewed the entirety of this plea agreement, or it has been read to me (and if necessary, translated for me) and reviewed with me by my attorney. After careful consideration and discussion with my attorney, and fully understanding my rights with respect to the pending criminal charge(s), I freely and voluntarily agree to the specific terms and conditions of the plea agreement.

DATE: 8/17, 2026

____________________
ALEJANDRO SANTOYO-GUZMAN
Defendant